```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                      CORPUS CHRISTI DIVISION

LINDA M. ADAMS and JAMES R. ADAMS,  §
                                    §
     Plaintiffs,                    §    Civil Action
                                    §    No. C-06-089
v.                                  §
                                    §
DELL COMPUTER CORPORATION,          §
DELL FINANCIAL SERVICES L.P.,       §
DELL DIRECTOR OF SALES, I.C.        §
SYSTEM, INC., et al.                §
                                    §
     Defendants.                    §
                                    §
```

## ORDER COMPELLING ARBITRATION

On this day came on to be considered the Dell Defendants' Motion to Compel Arbitration and Stay/Dismiss Proceedings and, Subject Thereto, Motion to Abate (D.E. 13) ("Dell Motion") and Defendant I.C. System's ("IC System") Motion to Compel Arbitration and Stay/Dismiss Litigation Pending Arbitration and, Subject Thereto, Motion to Abate (D.E. 17) ("I.C. Motion").[1]  For the reasons set forth below, the Court ORDERS the parties to submit Plaintiffs' claims to arbitration, and this case is DISMISSED in its entirety without prejudice.  The portions of the Dell Motion and the I.C. System Motion requesting the Court to abate and/or

---

[1] Plaintiffs incorrectly sued "Dell Computer Corporation," whereas the proper entity is "Dell Inc." (hereinafter referred to as "Dell").  Plaintiffs also sued the "Dell Director of Sales," an unspecified Defendant that was never served in the case.  Dell and Dell Financial Services , L.P. ("DFS") are hereinafter referred to as the "Dell Defendants."

stay the proceedings are hereby MOOT.

## I.  Jurisdiction

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k, as Plaintiffs allege violations of the Federal Fair Debt Collection Practices Act.  The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## II.  Factual Background

Plaintiff Linda Adams ordered a Dell notebook computer from a kiosk in a Dallas-area mall on October 21, 2004.  (D.E. 1, Exh. A-2, Plaintiffs' Original Petition ("Petition"), ¶¶ 5-7).  Ms. Adams alleges that she specifically requested that the computer be able to perform certain functions, and that she wanted to spend less than $2,000 to purchase the computer. (Petition, p. 7, ¶ 1(A)-(E), pp. 7-8, ¶¶ 1-3).  Ms. Adams claims that when the computer arrived, it did not have the requested capabilities, and Ms. Adams was charged $2,292.30, which was above what she was willing to pay. (Petition, p. 8, ¶¶ 2, 4).[2]  Ms. Adams says that after she contacted Dell several times regarding her problems with the computer, "Dell admitted their computer was not what Plaintiff ordered and agreed to come to her home and pick it up.  Dell never came."  (Petition, pp. 8-9, ¶¶ 5-6).

---

[2]Ms. Adams claims that she did not receive a promised rebate and a price adjustment that would have reduced the price below $2,000.00.  (Petition, p. 3, ¶¶ 2-3).

Ms. Adams arranged to finance the computer as a Dell Preferred Customer through Dell Financial Services. (Petition, p. 7, ¶ 1(C), pp. 9-10, ¶¶ 6-7). As Ms. Adams was not making payments on the computer, she was contacted by collection agency I.C. System. (Petition, p. 10, ¶ 8, Petition, Exh. C, D, E). Ms. Adams alleges that I.C. System "called daily, harassing [Ms. Adams], telling her she will pay the entire amount Dell requests plus interest to date or they will ruin her credit forever." (Petition, p. 10, ¶ 8).

Plaintiffs have attached to their Petition the Dell U.S. Terms and Conditions of Sale Agreement (Petition, Exh. F, "Dell Agreement"). The Dell Agreement states on the first page "**PLEASE READ THIS DOCUMENT CAREFULLY! IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU. THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE.**" (Dell Agreement, p. 1) (emphasis in original). Also on the first page, the Dell Agreement states "By accepting delivery of the Product, you accept and are bound to the terms and conditions of this Agreement. If you do not wish to be bound by this Agreement, you must notify Dell immediately and return your purchase pursuant to Dell's Total Satisfaction Return Policy."[3] (Dell Agreement, p. 1).

---

[3]Plaintiffs do not allege that they were not bound by the Dell Agreement because they never accepted delivery of the computer, or because they attempted to return the computer pursuant to the Dell "Total Satisfaction Return Policy." (Petition, pp. 8-9, ¶¶ 5-6). Rather, Plaintiffs allege that they

The Dell Agreement contains a "binding arbitration" provision, which states in relevant part as follows:

> **Binding Arbitration**.  ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) BETWEEN CUSTOMER AND DELL, its agents, employees, principals, successors, assigns, [and] affiliates ... arising from or relating to this Agreement ... SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect ... Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction. ... This transaction involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA).

(Dell Agreement, ¶ 13) (emphasis in original).[4]

The Dell Defendants also claim that Ms. Adams' Dell Preferred Account is subject to an arbitration provision in the Dell Preferred Account Agreement (Exh. 3-A to Dell Motion, "DPA

---

entered into a "new contract" with Dell on December 7, 2004, whereby the Dell Agreement "would *no longer* exist." (Plaintiffs' Response to Dell Motion, p. 2 ¶ 3) (emphasis added).  Moreover, Plaintiffs' Petition indicates that Plaintiffs did accept delivery of the computer, as they detail modifications they made to conform the computer to fit Ms. Adams' requirements. (Petition, pp. 7-8, ¶ 1) (Plaintiffs made "modifications" to the computer, including adding new input jacks, increasing memory and adding a new program).

[4]The Dell Defendants' motion alleges that customers receive a copy of the Dell Agreement when the product is delivered, and a link to the Agreement's terms appears on every page during the online ordering process.  (Dell Motion, ¶¶ 8, 9).  The Dell Motion also alleges that upon receipt and review of the terms of the Dell Agreement, prior to shipment the customer can cancel the order at no additional charge and receive a full refund.  (Dell Motion, ¶ 11).  The customer also has 21 days to return the computer for any reason. (Dell Motion, ¶ 12).

Agreement") that governs the account. (Dell Motion, ¶ 15). The Dell Defendants state that as a matter of standard practice, DFS mails the DPA Agreement to consumers once they are approved for a Dell Preferred Account, and customers are then given 24 hours to decline the terms and conditions of the DPA by calling a number that is provided to them. (Dell Motion, ¶ 15).[5] The arbitration provision in the DPA Agreement states in relevant part as follows:

> **Arbitration**. Any claim, dispute or controversy (whether based upon contract, tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim") shall be resolved, upon the election of either you or us, by binding arbitration pursuant to this arbitration provision ...
> **YOU ACKNOWLEDGE THAT IF A CLAIM ARISES YOU MAY BE REQUIRED TO SETTLE THE CLAIM THROUGH ARBITRATION AND ARE GIVING UP YOUR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION WITH RESPECT TO SUCH A CLAIM.**

(Dell Motion, ¶¶ 15-16; DPA Agreement, p. 6) (emphasis in original).

### III. Procedural Background

Plaintiffs brought this case in state court, alleging causes

---

[5] According to the Declaration of Elizabeth Lothspeich (Dell Motion, Exh. 3, "Lothspeich Declaration"), DFS mailed Ms. Adams a "Welcome Package" containing the DPA Agreement within 48 hours of the account being opened on October 21, 2004. According to DFS' records, Ms. Adams did not inform DFS that she rejected any of the terms of the DPA Agreement (including the arbitration clause). (Lothspeich Declaration, ¶ 9).

of action for common law fraud, breach of contract, breach of warranty, and violations of the Texas Deceptive Trade Practices Act, the Texas Finance Code and the Federal Fair Debt Collection Practices Act. (Petition, pp. 1-2, ¶ 1).

Defendant I.C. System removed the case to this Court on February 23, 2006, on federal question jurisdiction grounds. (D.E. 1, Notice of Removal, p. 1 ¶ 2). On May 19, 2006, pursuant to the parties' agreement, this Court stayed the case until August 1, 2006. (D.E. 24).

**IV. Discussion**

    **A.    The Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., established a federal policy in favor of arbitration, and sought to ameliorate perceived judicial hostility to arbitration. See Bhatia v. Johnston, 818 F.2d 418, 421 (5th Cir. 1987). Since the FAA was enacted, the courts have recognized an "emphatic federal policy in favor of arbitral dispute resolution". Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc, 473 U.S. 614, 631 (1985); see also Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995) ("Arbitration of disputes is strongly favored under federal and state law.").

Section 2 of the FAA makes a written provision of a contract to settle a controversy by arbitration "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2; see also Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 166 (5th Cir. 2004) ("as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts.").[6]

The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing party has failed, neglected, or refused to comply with an arbitration agreement. See Am. Bankers Ins. Co. v. Inman, 436 F.3d 490, 493 (5th Cir. 2006); 9 U.S.C. § 4. Arbitration is a matter of contract between the parties, a court cannot compel a party to arbitration unless the court determines that the parties agreed to arbitrate the dispute in question. See AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986); Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990). "[A]s with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors, 473 U.S. at 626.

If a valid arbitration agreement exists between the parties and the agreement covers their dispute, the district court does not have the discretion not to order arbitration. See Bhatia, 818 F.2d at 421.

---

[6]Section 2 of the FAA also states that the transaction or contract must involve "commerce." 9 U.S.C. § 1. The FAA defines commerce as "commerce among the several States or with foreign nations". 9 U.S.C. § 1.

B.   **Binding Arbitration Agreement**

The Court's first inquiry must be whether the parties agreed to arbitrate the dispute. See Bhatia, 818 F.2d at 421. "When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts. In applying state law, however, due regard must be given to the federal policy favoring arbitration". Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996) (citations and internal quotations omitted).

In this case, the Dell Agreement contains a binding arbitration agreement. (Dell Agreement, ¶ 13) ("ANY CLAIM, DISPUTE, OR CONTROVERSY ... BETWEEN CUSTOMER AND DELL ... SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION"). Under Texas law, "when the language of a contract is not ambiguous, we must give the words used their plain and ordinary meaning." Dell, Inc. v. Muniz, 163 S.W.3d 177, 181 (Tex. App.--San Antonio 2005); see also United Servs. Auto. Ass'n v. Pennington, 810 S.W.2d 777, 779 (Tex. App.--San Antonio 1991). The language of the Dell Agreement is clear and unambiguous, any disputes between the customer and Dell that arise from or relate to the Dell Agreement must be resolved by arbitration. See id.

Plaintiffs do not argue that the Dell Agreement does not contain a binding arbitration provision. Rather, Plaintiffs argue that the Dell Agreement was rescinded when Dell agreed to retrieve

the computer for a refund. (Plaintiffs' Response to Dell Motion, p. 2 ¶ 3). However, even if Dell agreed to pick up the computer and give Ms. Adams a refund, Dell never agreed to rescind the Dell Agreement.[7] Under Texas law,

> [p]arties may rescind their contract by mutual agreement and thereby discharge themselves from their respective duties. It is a well established rule that the repudiation of a contract by one party rescinds the contract when such repudiation is accepted by the other party. [However], *[i]f the repudiation is not accepted by the other party, the contract is kept alive for the benefit of both parties; the non-repudiating party, like the repudiating party, remains subject to all obligations under the contract.*

Santa Fe Petroleum, L.L.C. v. Star Canyon Corp., 156 S.W.3d 630, 638 (Tex. App.--Tyler 2004) (emphasis added); see also Texas Gas Utilities Co. v. Barrett, 460 S.W.2d 409, 414 (Tex. 1970); Griffith v. Porter, 817 S.W.2d 131, 135 (Tex. App.--Tyler 1991). The Dell Agreement sets forth the terms of Ms. Adams' purchase of the computer from Dell. (Dell Agreement, p. 1). Even if Dell had retrieved the computer from Ms. Adams, she still purchased the computer from Dell, and that purchase is governed by the terms of the Dell Agreement. (Dell Agreement, p. 1). Dell never agreed to rescind the Dell Agreement, and the Agreement therefore remains in force. See Santa Fe Petroleum, 156 S.W.3d at 638.

---

[7]Plaintiffs' Response to the Dell Motion only states that Dell agreed to pick up the subject computer from Ms. Adams' home, and to provide Ms. Adams with a full refund. (Response to Dell Motion, ¶¶ 3, 10-21). Plaintiffs do not state how agreeing to pick up the computer would equate into Dell specifically agreeing to rescind the Dell Agreement. (Response to Dell Motion, ¶¶ 10-21).

As to the validity of the Dell Agreement, at least two federal courts have considered the formation and language of the Dell Agreement, and both have concluded that the right-of-return contract was valid. See Provencher v. Dell, Inc., 409 F.Supp.2d 1196 (C.D. Cal. 2006) ("[t]he Agreement was a standard 'approve-or-return' contract. If [Plaintiff] was not satisfied with his computer and the services that Dell rendered in connection therewith, or if he found any of the provisions of the Agreement unacceptable, he could return the computer to Dell within 30 days and cancel the Agreement."); Falbe v. Dell, Inc., 2004 WL 1588243, *4 (N.D. Ill. 2004) ("it is plain that [Plaintiff's] conduct, *i.e.*, keeping the computer beyond 30 days, manifested his assent to the Terms and Conditions, and created a valid and enforceable agreement to arbitrate.").

Based on the above, the Court finds that the Dell Agreement contains a valid, written provision to submit all disputes arising out of or relating to the Agreement to binding arbitration. (Dell Agreement, ¶ 13). The Dell Agreement remains in force, and Plaintiffs are bound by its arbitration clause.

**C. Plaintiffs' Claims are Covered by the Dell Agreement Arbitration Provision**

The next issue before the Court is whether Plaintiffs' claims are covered by the arbitration clause in the Dell Agreement. "Any doubts concerning the scope of arbitrable issues should be resolved

in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Courts have distinguished between "narrow" arbitration clauses, which require arbitration of only those disputes that arise out of the contract, and "broad" clauses, which govern disputes that "relate to" or "are connected with" the contract. Pennzoil Exploration v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998); see also Tracer Research Corp. v. Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1295 (9th Cir. 1994).

Courts have construed arbitration clauses of disputes that "arise under or relate to" the contract as "extremely broad" and "capable of expansive reach." Kirby v. Highland Lakes Surgery Center, L.L.P. v. Kirby, 183 S.W.3d 891, 897-898 (Tex. App.--Austin 2006); see also Pennzoil, 139 F.3d at 1067-68; Hotels.com, L.P. v. Canales, 195 S.W.3d 147, 156 (Tex. App.--San Antonio 2006) ("[t]he arbitration provision in the present case is broad, encompassing 'any dispute arising from or relating to the use of [Hotels.com's] website or hotel reservations made through Hotels.com.'").

The arbitration clause in the Dell Agreement is a broad clause, covering all disputes "arising from" or "relating to" the Agreement. (Dell Agreement, ¶ 13). See Pennzoil, 139 F.3d at 1067-68. By its terms, the Dell Agreement applies to the customer's "purchase of computer systems and/or related products and/or services and support sold in the United States by the Dell

entity named on the invoice or acknowledgment provided to you." (Dell Agreement, p. 1).

Plaintiffs complain that the computer they ordered did not meet their required specifications, and that the price they were charged was higher than they were willing to pay. (Petition, p. 1, ¶ 1(A)-(E); pp. 7-8, ¶¶ 1-4). Plaintiffs also complain about their unsuccessful attempts to address the price and technical deficiency issues with Dell. (Petition, pp. 8-9, ¶¶ 5-6, p. 10, ¶ 11). Finally, Plaintiffs complain about the problems resulting from their failure to make payments on the subject computer. (Petition, p. 10, ¶¶ 8-9). These complaints all squarely "relate to" the Dell Agreement, as they all relate to Ms. Adams' purchase of the computer from Dell.[8]  (Dell Agreement, ¶ 13).

Accordingly, this Court finds that Plaintiffs' claims are covered by the broad arbitration provision in the Dell Agreement.

### D. **The Arbitration Provision in the Dell Agreement Applies to DFS and I.C. System**

The final issue before the Court is whether the arbitration clause in the Dell Agreement also covers DFS and I.C. System.

---

[8] In a similar case, Dell, Inc. v. Muniz, 163 S.W.3d at 181, the respondent complained that Dell misrepresented the amount of memory capacity in the respondent's computer by 7%. See id. at 179. The language of the agreement in the case was the same as the Dell Agreement in the instant litigation. See id. The court found that the FAA applied to the case, the broad arbitration clause covered the respondent's claim, and the trial court should have compelled the parties to arbitration. See id. at 181-82.

**1.   Dell Financial Services**

The arbitration clause in the Dell Agreement specifically covers all Dell "agents, employees, principals, successors, assigns, [and] affiliates." (Dell Agreement, ¶ 13). "Affiliate" is not defined in the Dell Agreement, accordingly "its ordinary meaning must be used." Eckland Consultants, Inc. v. Ryder, Stillwell Inc., 176 S.W.3d 80, 88 (Tex. App.--Houston [1st Dist.] 2004). Affiliate "is generally defined as a corporation that is related to another corporation by shareholdings or other means of control ... and as a company effectively controlled by another or associated with others under common ownership or control." See id. (internal citations omitted).

The Dell Defendants classify DFS as an affiliate of Dell, since DFS is "indirectly owned, in part, by Dell Inc." (Dell Motion, ¶ 13). Plaintiffs' Petition describes DFS as "a joint venture between Dell and CIT" and states that "Dell is a 70% owner of DFS." (Petition, p. 6, ¶ 3). Accordingly, the Court finds that DFS can be characterized as a Dell affiliate, and therefore DFS is covered by the arbitration provision in the Dell Agreement. See Eckland, 176 S.W.3d at 88.[9]

---

[9] Even if DFS were not covered by the arbitration clause in the Dell Agreement, DFS has its own binding arbitration clause with Ms. Adams, as set forth in the DPA Agreement. (Dell Motion, ¶ 15; DPA Agreement, p. 6). The Dell Defendants claim that the DPA Agreement was mailed to Ms. Adams' home within 48 hours of her opening a Dell Preferred Account, and that Ms. Adams did not inform DFS that she wished to decline the DPA Agreement's terms

### 2. **I.C. System**

Defendant I.C. System is not a signatory to the Dell Agreement (or the DPA Agreement). However, the Fifth Circuit has held that in certain circumstances, a non-signatory may still enforce an arbitration clause in a contractual agreement. See Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000). In Grigson, the Fifth Circuit held that pursuant to the doctrine of equitable estoppel, a non-signatory to an arbitration agreement can use the agreement to compel arbitration in two instances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory; and (2) when a signatory raises allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more signatories to the contract. See Grigson, 210 F.3d at 527 (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); see also McMillan v. Computer Translation Sys. & Support, Inc., 66 S.W.3d 477, 482 (Tex. App.--Dallas 2001).

---

and conditions. (Lothspeich Declaration, ¶ 9). By its plain language, the DPA Agreement arbitration clause submits that all claims and disputes "arising from or relating to" the DPA Agreement must be resolved by binding arbitration. (DPA Agreement, p. 6). The DPA Agreement "governs [Ms. Adams'] Dell Preferred Account", and this broad arbitration clause encompasses Ms. Adams' claims regarding payments on the subject computer. (DPA Agreement, p. 1). Accordingly, since there is a binding arbitration agreement between DFS and Ms. Adams, and Ms. Adams' claims are covered by the broad arbitration provision, the Court must compel Ms. Adams' claims against DFS to arbitration. See Bhatia, 818 F.2d at 421.

The instant case is covered by the second situation outlined above.  See Grigson, 210 F.3d at 527.  Ms. Adams (signatory) is raising allegations of "substantially interdependent and concerted misconduct by both a non-signatory [I.C. System] and one or more signatories to the contract [Dell]."  See id.  Ms. Adams refers to I.C. System as a "Dell collection agency", and she claims that I.C. System has violated the law in its attempts to collect on Ms. Adams' Dell Preferred Account.  (Petition, p. 10, ¶¶ 8-9).  As Ms. Adams is raising allegations of interdependent misconduct by Dell and I.C. System (a signatory and non-signatory to the contract), I.C. System may accordingly enforce the arbitration clause in the Dell Agreement.  See Grigson, 210 F.3d at 527.[10]

### E.  Dismissal of Plaintiffs' Claims Without Prejudice

Whether to dismiss this action or to stay it is within the discretion of this Court.  See Fedmet v. M/V Buyalyk, 194 F.3d 674 (5th Cir. 1999).  The Fifth Circuit has held that where all of the issues involved in a dispute are referable to arbitration, the case should be dismissed.  See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("Given our ruling that all issues

---

[10]Moreover, the Dell Agreement arbitration clause specifically covers "agents" of Dell.  (Dell Agreement, ¶ 13).  Plaintiffs refer to I.C. System as an "agent of Dell." (Plaintiffs' Response to I.C. System Motion, ¶ 5) ("[a]s to Defendant, I.C. Systems (sic), Inc., they are a collection agency hired by the Defendant Dell and are therefore an agent of Dell.").  Per Plaintiffs' own characterization of I.C. System, it would then be covered by the arbitration clause in the Dell Agreement.

raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.").

As discussed above, all of Plaintiffs' claims are subject to the Dell Agreement arbitration clause, as they all relate to Ms. Adams' purchase of the Dell computer.[11]  (Dell Agreement, p. 1). Accordingly, this Court will order Plaintiffs to submit their dispute to arbitration and dismiss the suit without prejudice.

**V.   Conclusion**

For the foregoing reasons, the parties are ORDERED to submit Plaintiffs' claims to arbitration.  This suit is hereby DISMISSED without prejudice.

SIGNED and ENTERED this 18th day of September, 2006.

_____
Janis Graham Jack
United States District Judge

---

[11]As discussed above, Ms. Adams' claims against DFS are also covered by the DPA Agreement arbitration clause.